## UNITED STATES v. CLIFFORD.
### No. 291.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

Lamar Hardy, U. S. Atty., of New York City (David W. Wainhouse, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Joseph P. Brennan, Jr., of New York City, for appellee Jeremiah Joseph Clifford.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On February 26, 1936, the appellee Clifford applied for naturalization to the United States District Court for the Southern District of New York. His petition was opposed by the government on the ground that during the period of at least five years immediately preceding the date of the filing of his petition he "did not behave as a person of good moral character attached to the principles of the Constitution of the United States and well disposed

to the good order and happiness of the same." This objection was practically quoted verbatim from section 4 of the Act of Congress of June 29, 1906 (as amended, U.S.C. title 8, § 382 [8 U.S.C.A. § 382]).

Clifford, together with one Elsie Evans, was indicted in Michigan in 1933 on the charge of attempting to bring his sister-in-law into the United States illegally and both pleaded guilty. They were each fined $100 and he paid the fines. He filed an affidavit in the naturalization proceeding attempting to explain his conduct in which he stated that he paid Elsie Evans $200 for assisting his sister-in-law to enter the country believing she could be brought in legally. He also stated that he had pleaded guilty in 1930 to the charge of violating the Prohibition Act (27 U.S.C.A. § 1 et seq.). Upon the foregoing record the District Court overruled the objection of the government and admitted the alien to citizenship. The United States has appealed.

We may assume that the violation of the Prohibition Act referred to would be insufficient to bar admission because it occurred more than five years before the filing of Clifford's petition, but we cannot take this view as to the act of conspiracy to introduce an alien into the country within that period. Such a crime involves an unlawful intent which the judgment of conviction established beyond any contradiction sought to be proved by the affidavit.

The question is whether Clifford, in view of his conviction, has shown "that he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

The Court of Appeals of the Sixth Circuit denied admission to an alien because he had his wife unlawfully brought into the United States from Canada. In re Nybo (C.C.A.) 42 F.(2d) 727, 728. In an opinion by Judge Moorman, from which Judge Denison dissented, a majority of the court said that while the alien, in spite of his unlawful acts, still might be regarded as up to the current standard in moral character, he could not be said to be "well disposed to the good order and happiness of the [United States]." It is an important policy of the United States, thought by many to affect its prosperity and happiness, to maintain a limit to the number of aliens entering the United States and to restrict immigration to national quotas fixed by act of Congress with but few exemptions. Examination at the border or port of entry is the only means of enforcing a law which affects labor conditions in the country and of assuring the character of immigrants even in cases where they are within quota requirements. Attempts to bring in relatives of persons already within the United States are frequent and often successful, in spite of all efforts to enforce the immigration acts. A person who deliberately violates a law so fundamental to the whole policy of the United States and one which in view of the many miles of Canadian border is so difficult to enforce must, we think, be regarded as not well disposed to its "good order and happiness." It is true that if Clifford had been engaged in bringing in aliens as a commercial business the case would have been one where there could be no doubt of his disqualification for admission, but even though his violation of law was limited to helping a member of his family across the border we think it was sufficiently deliberate and important to bar his right to citizenship.

It is suggested that the words "well disposed to the good order and happiness of the United States" were introduced in the act to embrace persons of turbulent disposition and were not intended to include a man like Clifford who was smuggling in a near relative. We see nothing, however, to call for such a limitation in the clause. A person deliberately doing an act contravening a most important policy of the government, from whatever normal or even common motive, may be as ill disposed toward the happiness of the country, though his acts be calculated to provoke no violence, as one who is more rough or ruthless in his behavior. The test would seem to be the relative importance of the policy violated and the deliberateness of the violation.

Order reversed.

L. HAND, Circuit Judge, concurring in result.