## In re ALDECOA.

### No. 832.

District Court, D. Idaho, S. D.

Feb. 21, 1938.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Dist. Attys., all of Boise, Idaho, for the United States.

CAVANAH, District Judge.

John Domingo Aldecoa, a native of the Republic of Spain who arrived in the United States in 1889, made declaration of in-

tention to become a citizen of the United States on October 7, 1908. Thereafter, on May 6, 1935, he made another declaration of intention to become a citizen, and on August 2, 1937, he filed the present petition to become naturalized as a citizen.

On October 26, 1918, he made an affidavit which was presented to the Bureau of Naturalization in which he withdrew his intention to become a citizen of the United States and there stated, "which withdrawal I understand shall operate and be held to cancel my declaration to become a citizen of the United States and shall forever debar me from becoming a citizen of the United States, in accordance with the Act of Congress approved July 9, 1918; that I herewith surrender my original duplicate copy of my declaration of intention to become a citizen of the United States; * * * and I do hereby claim relief from liability to military service in accordance with the law and regulation." Upon that affidavit and request of John Domingo Aldecoa, the Chief Naturalization Examiner of the United States filed in the state district court his petition "In the Matter of the cancellation of the declaration of intention of Domingo Aldecoa," praying "that in pursuance of said Act of July 9, 1918, a declaration of intention filed by the said alien in this court as above stated, be cancelled and held for naught, and an order be entered in and upon the records of this Court forever debarring said alien from citizenship."

On May 24, 1919, the state district court entered an order upon the petition of the examiner to the effect: "Upon consideration of the foregoing petition, it is hereby ordered and decreed that the declaration of intention of the alien named in the records of this Court be cancelled and held for naught, and that he is forever debarred from becoming a citizen of the United States; and it is further Ordered that the Clerk of this Court shall forward a copy of this Order to the Bureau of Naturalization, U. S. Department of Labor, Washington D. C. and shall attach a copy thereof to the declaration of intention of record in this Court."

It appears that the United States was engaged in the "World war" at the time the affidavit was made withdrawing and canceling the first declaration of intention and claiming relief from military service, 42 Stat. 105. Under the declarations of intention and the law, the alien asserts that it is his intention in good faith to become a citizen of the United States and to permanently reside therein, and in the petition for naturalization, which is required by law, he further asserts that he is attached to the principles of the Constitution and well disposed to the good order and happiness of the United States.

■ The alien's right of naturalization is a privilege to be given and it must come from congressional legislation. The right conferred is a culmination of a number of acts of Congress from the earliest period of the government. Congress has made provision concerning the requirements when such alien has made declaration of his intention and petitions to become a citizen, and among them, before he is admitted he must declare on oath in open court that he will support the Constitution and laws of the United States against all enemies foreign and domestic and bear true faith and allegiance to the same, and that he is attached to the principles of the Constitution and well disposed to the good order and happiness of the United States. U.S.C.A. title 8, §§ 381, and 382.

■ It is a fundamental principle of the Constitution that it is the duty of a citizen by force of arms, when called upon by the government, to defend it against all enemies.

■ The Constitution empowers Congress to provide for the common defense, which was one of the purposes for which the people of this country ordained and established it. This principle and the interpretation of the Constitution has been repeatedly recognized, and the right of an alien to acquire citizenship is purely statutory, will not be granted unless there has been strict compliance with statutory requirement. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302.

■ With this thought in mind, the essential qualification of citizenship is a willingness to bear arms when called upon by the government of the United States. The duty of the government to the citizen includes the reciprocal obligation of the citizen to render military service and the right to compel it, but attention is called to the acts of Congress of July 9, 1918, § 4, chapter 143, 40 Stat. 885, title 8, § 366 U.S.C.A., and the Act of February 11, 1931, 46 Stat. 1087, title 8, § 366a U.S.C.A., wherein it is provided in the Act of July 9, 1918, that when a subject of a country neutral in the World

War who had declared his intention to become a citizen of the United States, and who was relieved from liability to the military service upon his making declaration withdrawing his intention to become a citizen of the United States which operated to cancel his declaration of intention to become an American citizen to forever debar him from becoming a citizen of the United States, and under the Act of February 11, 1931, it is provided: "Notwithstanding any provision of law to the contrary, no alien shall be debarred from becoming a citizen of the United States on the ground that he withdrew his intention to become a citizen of the United States in order to secure discharge from the military service, if such withdrawal (and the application therefor) and discharge took place after November 11, 1918," * * * although the period to act under the first declaration of intention had expired and that at the time of the making of the affidavit and presenting it with the Bureau of Naturalization on November 25, 1918, the first declaration was dead. That contention would not apply under the record, for the question here is not primarily one of claiming exemption from military service but was the alien attached to the principles of the Constitution and the laws of the United States and well disposed to the good order and happiness of the United States? If the alien was in a state of mind, and assumed an attitude at the time when the United States was engaged in war that he would not by force of arms defend the United States, he certainly was not attached to the principles of the Constitution and well disposed to the good order and happiness of the United States. I have difficulty in reasoning that the seven-year period of life of the declaration of intention applied to or disposes of that principle. ·

■ Repentence is often recognized, but to say that after one who has been put to the test when the United States was engaged in a war, in announcing whether he was attached to the principles of the Constitution and well disposed to the good order and happiness of the United States, and he by an affirmative act says no, requires the invoking of the Act of July 9, 1918, which forever debars the alien from becoming a citizen. But it is further agreed that section 382 of title 8, U.S.C.A., limits being attached to the principles of the Constitution and well disposed to the good order and happiness of the United States to five years. It would be a strange interpretation of the statute that, if he was so attached for five years, he could thereafter change his mind and by an affirmative act say that he was not.

■ Having then disposed of the situation under the Act of July 9, 1918, we are required to consider an interpretation and application of the Act of February 11, 1931, title 8, § 366a, U.S.C.A. As stated, the record shows that the alien made an affidavit on October 26, 1918, when the United States was engaged in the World War, withdrawing his declaration of intention to become a citizen and requesting that it be canceled and claiming relief from liability of military service. That act was done prior to November 11, 1918, and the discharge took place by the order of the state district court on May 24, 1919. The inquiry then is, What is the correct interpretation and application of the Act of February 11, 1931, under the present record?

The act is clear that both the withdrawal (and the application therefor) and discharge must take place after November 11, 1918.

So the principle question, being one of law, when applied to the undisputed facts, is whether the requirements of the statute apply to the alien.

Was the date of the making of the affidavit by the alien on October 26, 1918, prior to November 11, 1918, or the receiving of it by the Bureau of Naturalization on November 25, 1918, and the petition to the state court by the examiner and order of that court canceling his first declaration of intention, the controlling date of withdrawal and application and discharge? If the receiving of the alien's affidavit by the Bureau of Naturalization on November 25, 1918, constituted a withdrawal and not the date of the making of it on October 26, 1918, then the Act of February 11, 1931, would apply and the alien would not be debarred from becoming a citizen as the application and order of discharge of the state court took place after November 11, 1918. To constitute a withdrawal, it must be the act of the alien beginning with the request made to the department of the government or in court, and, until he moves in presenting it to the proper authorities or in court, it does not take place in making it effective upon which discharge could be based, therefore, Congress having the power to prescribe the condition upon which an alien may become a citizen and it having by the Act of February 11, 1931, provided that, notwithstanding any provision of the law to the contrary, an

alien may not be debarred from becoming a citizen on the ground that he withdrew his intention to become a citizen of the United States in order to secure discharge from military service, if his withdrawal, application, and discharge took place after November 11, 1918. It appears that the withdrawal and application therefor and discharge all took place after November 11, 1918, which permits him to now be admitted as a citizen under the Act of February 11, 1931. The order of the state district court made after November 11, 1918, and based upon the withdrawal, and application for discharge, which both took place after November 11, 1918, would not become res judicata, for the Act of February 11, 1931, does not debar an alien from becoming a citizen if his withdrawal and application therefor and discharge all occur after November 11, 1918.

The petition of the alien to become a citizen of the United States is granted.