### UNITED STATES v. VAN RIPER.
### No. 137.

Circuit Court of Appeals, Second Circuit.
Nov. 7, 1938.

John S. Wise, Jr., of New York City (James E. Wilkinson, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Richard Delafield and Boris Kostelanetz, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Appellant pleaded guilty to an indictment charging, in the first eight counts, violations of § 414, Title 8, U.S.C., 8 U.S. C.A. § 414 (34 Stat. 603), and in the second eight counts, violations of § 232, Title 18, U.S.C., 18 U.S.C.A. § 232 (35 Stat. 1111), and in Count 17 a conspiracy, in that he and others conspired to violate § 414, Title 8, U.S.C., 8 U.S.C.A. § 414 (34 Stat. 603).

The first eight counts charged that appellant advised named aliens not entitled to naturalization to file their preliminary papers declaring an intent to become citizens of the United States. The second eight counts were charges of subornation of perjury in a naturalization proceeding. He was sentenced to three years on each of the first eight counts, to run concurrently; two years on the 17th count (conspiracy) to run concurrently with the sentences on the first eight counts; and five years each on counts 9 to 16, to run concurrently, the sentences on the last counts to commence at the expiration of the sentence on counts 1 to 8 and on count 17. Sentence on counts 9 to 16 was suspended, and probation imposed for five years.

After service of sentence on the first eight counts, and while on probation, an order was issued on April 13, 1937, for his apprehension and for revocation of his probation. After a hearing, the district judge revoked the probation because appellant was found to have been engaged in fraudulent immigration activities.

After appellant's release from prison on August 29, 1933, he was employed by a firm of custom brokers until 1936. He lost his employment, he says, when the conviction became known to his employer. The complaint resulting in the revocation of his probation did not emanate from the probation officer but from the immigration authorities. His good conduct since his release from prison is vouched for by several reputable witnesses.

The district court has rules approved by the judges thereof governing the conditions on which probation is granted, a breach of which may mean the end of probation. The condition applicable here requires the probationer to live a clean, honest and temperate life.

The charge of dishonesty while on probation was made on facts arising out of advice and assistance appellant gave to a couple, Italians by birth, who had made illegal entries into the United States in 1927 and 1928 and were now ordered deported. They were unmarried and had a child born here after living together as man and wife. Appellant, who had practiced in his legal career in this class of cases, advised them to arrange for the care of their child, to seek bail, surrender to the authorities at Ellis Island, and to tell the truth and to try to obtain assistance from the Secretary of Labor. When the matter reached the Washington office, a local and experienced counsel represented them. Appellant prepared affidavits for these aliens which their counsel turned over to the immigration authorities. They truthfully stated the facts. After hearings had at Ellis Island, the Labor Department granted permission to the aliens to depart voluntarily to any country of their choice on or before November 1, 1935. The aliens on so departing became eligible to and did immediately apply for and secured lawful re-entry. This they did in the following manner: the woman had been married previously and on advice of counsel she secured a divorce in Mexico, so that these two aliens could marry and enter a foreign country as husband and wife under the color of right to secure from the American Consul immigration visas for

eventual lawful admission to the United States. They married after the divorce.

Appellant in 1935 was asked to assist one Fast, the husband of a lawful resident alien woman, to secure lawful entry to the United States. This he did by recommending an experienced lawyer, a former United States Vice Consul.

In November, 1935, these three aliens left New York by train enroute to St. Albans, Vermont. They were told by counsel other than but associated in this matter with appellant, to leave the train at St. Albans and go by taxicab to Montreal, which they did, the counsel remaining on the train going to Montreal. There he was to negotiate on behalf of the newly-wedded couple for a validation of their Italian passports for travel to the United States, which validation had been refused by the Italian Consul in New York. The three aliens left Montreal that night for Hamilton, Province of Ontario, Canada, where they met the lawyer recommended by appellant and he carried on negotiations with the American Consul there for their immigration visas. Investigation followed and resulted in deferring the issuance of the visas. The State Department investigator was advised by appellant and the aliens, as well as by the attorney, the steps taken to bring the aliens into the United States. The investigator testified to an investigation made by him at St. Albans. Relying upon mere hearsay, he testified that the three aliens in a taxicab had gone illegally into Canada. It was not established at what place they crossed. Canada maintained at this time several immigration service stations, but the State Department investigator was permitted to testify that he caused another inspector to ascertain from the United States station at Highgate Springs, Vt., as to whether or not records of the Canadian Government station at Phillipsburg, Quebec, showed entry into and departure from Canada at that point by the taxicab owner or driver on the date in question.

The three aliens remained in Canada for three months prior to their re-entry into the United States. They registered with the Canadian immigration office at Hamilton, Ontario, and agreed that they would advise the Canadian officers of their departure. They did so. At the suggestion of an employee in the State Department, appellant advised the couple that they should go to a jurisdiction requiring a shorter residence and remain there until a new divorce was granted and remarriage had because of the questionable validity of the Mexican divorce. It was stated that the department had informed the consul at Hamilton it had no objection to his granting immigration visas so they might proceed through the United States to such a jurisdiction. Fast received his immigration visa on February 11, 1936 and was lawfully re-admitted to the United States by the immigration authorities.

The American Consul at Hamilton admitted receipt of this permission to proceed to another jurisdiction. He demurred, however, to granting transit visas through the United States to Cuba, which was the jurisdiction suggested, on the theory that their desire eventually to immigrate into the United States was inconsistent with their desire to pass through in transit. The couple then proceeded through Nova Scotia and went to Cuba.

Appellant attempted to assist them but was denied entry into Canada and later joined the couple on a boat at Boston and accompanied them to Havana. They later received visas and were lawfully admitted into the United States as lawful residents.

The record discloses that all the facts were made known to the Department and visas were issued with full knowledge of the movements of the three aliens. The dishonest act charged against the appellant was that he was instrumental in causing these aliens to be smuggled into Canada in violation of the Canadian Immigration Laws. Canadian immigration regulations were inquired into by the court below and the lawfulness of the entry into Canada by taxicab questioned. There is the charge that the taxi driver took some devious route in entering Canada, but there is no proof upon which to base this as a fact. As was well asked by the court below: "But I confess that there is a doubt created in my mind with respect to whether there has been any prearrangement with the taxicab driver to make the legal exit from the country on Sunday and the legal entry into the country on Monday. Was there any design or purpose such as counsel urges which the court would be justified in inferring from the testimony in this case?"

If the taxi driver left St. Albans Sunday morning, he would have to be back there to start off to Montreal with the aliens Monday morning. Where he went

or what he did on Sunday is not suggested. There is no evidence of any of the parties concerned in the Monday morning trip that they knew anything about it. It was 35 miles from St. Albans to Montreal. Whether or not the taxi driver's return Monday evening or night was from the trip taken with these aliens to Montreal on Monday is not shown or suggested by the evidence. It was not sufficient upon which to base that finding.

Assuming, without deciding, that a violation of Canadian law would be a violation of the terms of probation, it was not shown by evidence of probative force that any law or regulation of Canada was violated. To go into Canada, the aliens were not required to secure a certificate from the Canadian Immigration Department, because such a permit is not required of a transient. The aliens did not enter Canada by stealth; their temporary stay was not shown to have been unlawful. Although certain Canadian regulations were offered in evidence, there was no showing how these were violated. Nor did the Canadian authorities proceed against the three aliens for their arrest or deportation, notwithstanding their presence in that country for three months. These circumstances do not sustain a claim of violation of Canadian law.

While a probationer is not entitled to a formal trial, he is entitled to a hearing and to have the conclusions upon which the court acts based upon relevant proven facts. The decision must not rest upon whim or caprice or suspicion of misconduct not proven. Escoe v. Zerbst, 295 U. S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566; Burns v. United States, 287 U.S. 216, 222, 53 S.Ct. 154, 77 L.Ed. 266; Campbell v. Aderhold, D.C., 36 F.2d 366, 367. In the last case, this court pointed out that the conditions of probation ought to be definite and made plain to the probationer and revocation ought not to be capriciously had if these conditions are observed.

Considering the conduct required by the rules of the district court referred to, we think that there has been no misconduct constituting a violation of the probation requirements. Indeed, there is no claim of violation of the United States Immigration Laws and there is no competent proof of a violation of the immigration laws of Canada.

Judgment reversed.