## In re SCHLAU.

### No. 262.

Circuit Court of Appeals, Second Circuit.

June 10, 1943.

Mathias F. Correa, of New York City (Marvin M. Notkins, of New York City, of counsel), for appellant.

Samuel Schlau, of New York City, for respondent.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

In 1911, respondent, Max Schlau, was married, in Austria, to Brane Levitz. He and she were orthodox Jews. In 1913 he emigrated to this country. His wife fol-

lowed him in 1914; they lived together until 1916 when they separated. In 1920 they were "divorced," pursuant to a "bill of divorcement," by a Rabbi in New York. As the able district judge found, such a divorce has been regarded as valid by Jews for over two thousand years, "has the sanction of deeply-rooted moral and religious traditions," and "has enjoyed a status of civil effectiveness in many countries and over many centuries." It was thus recognized in Austria,[1] although it is not valid here.

Shortly after this divorce, Brane, the divorced wife, "remarried"; Schlau has not since seen or heard from her and knows nothing of her whereabouts. In August 1921, Schlau and Diena Zerger applied to the city clerk of New York City for a marriage license. Such applicants are required to give answers, in an "Affidavit," to questions contained in a printed form. Schlau, in such an affidavit, stated that this was to be his first marriage; in the license issued by him the clerk reported that in Schlau's "verified statement" he had also stated that he had no "former wife living or dead." Schlau and Diena were "married," pursuant to this license, by a Rabbi on August 28, 1921. Some seventeen years later, July 12, 1938, Schlau filed his Declaration of Intention. On June 10, 1941, approximately twenty years after his second "marriage," he filed his petition for naturalization and made an affidavit before an Examiner, stating the facts substantially as above narrated, including the statement that, when he had applied for his marriage license in 1921, "the clerk did not ask me whether I had been married before." On September 10, 1941, he made another affidavit before another Examiner in which he said that the clerk had so asked him; that he had told the clerk he had not been previously married or divorced; that he did not know why he had made those false statements in 1921; and that he and his first wife "did not think it necessary to obtain a civil divorce in the courts and we never procured such a divorce."

The District Director of the Immigration and Naturalization Service filed a petition objecting to the granting of citizenship to Schlau on the sole ground that he "is unable to establish good moral character * * * in that" he "is residing with a woman to whom he is not lawfully wedded, he having obtained a Rabbinical divorce from his first wife while a resident of New York, and subsequently, on October 27, 1921, contracted a second marriage in New York City, without attempting to obtain a legal dissolution of his previous marriage." The petition added that "in support of the grounds for such opposition, there is attached hereto and made a part hereof an affidavit duly verified by the aforesaid petitioner for naturalization on the 10th day of June, 1941." The trial judge, in the District Court, despite the objection of the Director, entered an order granting Schlau's petition for naturalization, and the government has appealed.

The government's objection, as above noted, was based solely on the ground that Schlau had not established a good moral character[2] because "he is residing with a woman to whom he is not lawfully wedded." The trial judge correctly held that that was not enough to deprive Schlau of good moral character; that, of course, criminal adultery, especially within the statutory five-year period, would be sufficient.[3] He found that Schlau, in good faith, believed he had been validly divorced, and that therefore his relations with Diena were not criminally adulterous.[4]

The government, in its brief here, says that it "does not urge that the fact of a remarriage after a rabbinical divorce is, ipso facto, proof that the petitioner lacks those moral qualifications, even though the subsequent marriage may be technically in-

---

[1] "Jews in Austria may obtain absolute divorce under special regulations adopted from the Mosaic Laws and Rabbinical Jurisprudence * * * Marriage may be absolutely dissolved by means of a bill of divorcement given by the man to the woman, with the mutual agreement of both parties." Ringrose, Marriage and Divorce Laws of the World (1911) 70. See The Jewish Encyclopedia, title "Get."

[2] The statute, 8 U.S.C.A. § 707(a), provides that no person shall be naturalized unless "for at least five years" preceding the date of the filing of his naturalization petition, he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

[3] Estrin v. United States, 2 Cir., 80 F. 2d 105. See Judge Rifkind's opinion in United States v. Marofioti, D.C., 43 F. Supp. 45, 46, distinguishing the case at bar.

[4] Estrin v. United States, supra.

valid under the laws of the State where it is celebrated." The government does argue that Schlau could not have believed in good faith the divorce to be valid, because the "only logical conclusion" to be drawn from "the mis-statement in the application for the license" is "that he was quite aware that no marriage license would have been given to him had he disclosed the fact."

We cannot agree. That Schlau made those statements to the clerk in order to conceal criminal or immoral conduct, or knowingly to enable himself to enter into an illegal second marriage, is not the "only logical conclusion." If he honestly believed that his divorce was valid—as he might well have in view of his religious traditions and the Austrian law—he may also have believed that correct statements in his license affidavit as to his previous marriage were of no great importance. Perhaps he merely wanted to conceal his previous marriage from his bride to be; and, while such a falsehood for such a purpose in 1921 would not disclose a high sense of honor, it would not necessitate the conclusion that "good moral character" was lacking either then or many years later during the statutory five-year period. Nor do his conflicting statements in 1941, before the Examiners, as to what he was asked by and told the clerk in 1921, compel the exclusive inference that he knew his divorce to have been legally ineffective. It is to be noted that the government has not based its objection on the ground that those conflicting statements, as such, aside from their bearing on Schlau's good faith as to his divorce, are evidence that Schlau did not possess a good moral character.[5]

But the trial judge did not rest his conclusions on the foregoing ground. Stating that Schlau "mis-stated a material fact" in connection with his application for the marriage-license, he merely remarked: "That event occurred long beyond the statutory period. It has, therefore, been given no effect." That was not an adequate reason for ignoring that mis-statement. Accordingly, we remand the case so that the trial judge can again consider the matter and so that Schlau and the government may present testimony on the issue orally at a hearing before the trial judge. Petition of Zele, 2 Cir., 127 F.2d 578.[6]

Reversed and remanded.

---

5 Cf. United States v. Bischof, 2 Cir., 48 F.2d 538, 539; United States v. Beda, 2 Cir., 118 F.2d 458, 459; Russo v. United States, 6 Cir., 127 F.2d 171; United States v. Rubia, 5 Cir., 110 F.2d 92, 93; Schneiderman v. United States, 9 Cir., 119 F.2d 500, 504, certiorari granted 314 U.S. 597, 62 S.Ct. 98, 86 L.Ed. 481.

6 Cf. Estho v. Lear, 7 Pet. 130, 8 L. Ed. 632; Armstrong v. Lear, 8 Pet. 52, 74, 8 L.Ed. 863; United States v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 423, 424, 22 S.Ct. 428, 46 L.Ed. 619; Finefrock v. Kenova Mine Car Co., 4 Cir., 22 F.2d 627, 634; Wyant v. Caldwell, 4 Cir., 67 F.2d 374; Pfeil v. Jamison, 3 Cir., 245 F. 119.