Petition of ZELE.

No. 248.

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1944.

---

See also 127 F.2d 578.

Milton S. Gould, of New York City (Kaufman & Cronan and Samuel H. Kaufman, all of New York City, on the brief), for petitioner-appellant.

John B. Creegan, Asst. U. S. Atty., of New York City (James B. M. McNally, U. S. Atty., of New York City, on the brief), for the United States.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from an order of the District Court accepting the recommendations of the trial examiner and denying the petition for naturalization of Eugene Zele on the ground that good moral character had not been satisfactorily established. The facts of the case can be found in our former opinion, 127 F.2d 578, 580, wherein we reversed an order of the District Court denying Zele's petition and remanded the proceeding for hearing in accordance with the views there expressed. We stated that under 8 U.S.C.A. § 382,[1] the burden of proof to show good moral character rested upon petitioner, but that "good behavior *during the five year period* [i.e., preceding the date of the petition] is the only test of moral fitness provided in the statute." (Italics as in the original.) And we went on to speak of petitioner's connection with Harold Van Riper—whose conviction of various offenses in advising aliens to violate the naturalization laws was before us in U. S. v. Van Riper, 2 Cir., 92 F.2d 1020, certiorari denied 303 U.S. 635, 58 S.Ct. 521, 82 L.Ed. 1096; Id., 99 F.2d 816, and 113 F.2d 929, certiorari denied 311 U.S. 696, 61 S.Ct. 134, 85 L.Ed. 451—as follows: "It would not be reasonable to infer misbehavior during that period from the petitioner's entanglement in 1931 with Van Riper—a crooked lawyer who led aliens to seek citizenship through the use of false documents and lured them on by promises

[1] The statutes here involved are 8 U.S.C.A. §§ 380, 382, quoted in our previous opinion. Section 382 contains the provision that the alien for five years "immediately preceding the date of his petition" must have "behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." Section 380 requires "the declaration of intention" of the petitioner to be "attached to and made a part of such petition." These provisions were incorporated into the Nationality Act of 1940 as §§ 307(a), 332(d), 8 U.S.C.A. §§ 707(a), 732(d).

to speed their admission by political influence." The special pertinency of this statement will appear as we discuss later herein the actual course which the rehearing took.

In the opinion we also pointed out that the only black mark in the record against petitioner during the five-year period was the incorporation by reference in his 1940 petition for naturalization of the 1934 declaration of intention, with its false statement concerning prior declarations. Since, however, petitioner had explained the original false statement as having been made on the advice of a woman at the information desk of the naturalization service, "an explanation of his conduct that was not contradicted by the government," we said that "he should be given an opportunity to show by oral testimony that when he incorporated the declaration of November 2, 1934, in his petition he was not intending to conceal from the Examiner his earlier application of 1931, but was doing no more than formally complying with Section 380 of the Naturalization Act without any deception in mind." We added: "His delinquencies in 1931 could have no bearing except on the credibility of his statements," and concluded: "A more adequate record in a proceeding where witnesses may be called and examined and cross examined will enable the court to determine the petitioner's behavior during the five year period and to adjudicate his rights with more certainty than from the scanty record now available." 127 F.2d at page 580. We thus made perfectly clear that the purpose of the further proceedings should be to investigate petitioner's activities from February 19, 1935, to the present, with particular emphasis upon his intentions in making the incorporation by reference in 1940.

Despite these explicit instructions, the rehearing before the examiner was almost wholly concerned with the Van Riper affair and its implications. The hearing opened with the cross-examination of petitioner as to his declaration of intention of 1934, then went back to his declaration of 1931, and continued throughout this day and the second day until almost its end with practically no reference to events later than those periods. Further details were developed to the effect that petitioner realized his declaration of October 19, 1931, was fraudulent two days after he signed it, that he then went to Canada and returned on the basis of the fraudulent declaration so as to cancel the $500 bond

for a temporary visitor which his brother had posted, that when he heard the immigration officials were looking for him in March, 1932, he went to California, and that when he returned to the United States in 1934 he used the first name "Evzen," whereas he had used "Eugen" in 1929. Objections of his counsel to this extensive reiteration of details of conduct taken note of by us generally on the previous appeal were summarily overruled on the ground that his credibility was being tested. Not until the third day, when petitioner's counsel took over the examination, did the hearing really come to more recent matters, and then only to a limited extent. Petitioner revealed that on July 3, 1935, he was called into the naturalization service office for questioning, at which time he informed Assistant District Director Muller of his connections with Van Riper. This was corroborated by Muller, who testified briefly as to petitioner's statement to him in July, 1935, concerning the Van Riper association. Only one other witness was presented, an official of the New York State Education Department concerned with the licensing of physicians, who did not claim to know petitioner. Petitioner did, however, present the affidavits of character witnesses under an agreement with the government to produce them for cross-examination upon request; since there was no such request, we must assume them to stand unchallenged so far as they go. The only new matter from the government's standpoint, touching on the crucial five-year period, comprised contentions that petitioner had made certain false statements in the affidavit which he signed before naturalization officials on June 24, 1940, as well as in a letter which he wrote to the New York Board of Medical Examiners on October 14, 1941.

It was on the basis of this hearing that the examiner recommended denial of the petition, a recommendation which the District Court accepted without conducting an independent hearing, in an opinion sharply critical of petitioner's "deliberate and intentional perjury," his "misdeeds," his "immoral character." We do not think the rehearing achieved the purpose we had in mind.

Since one of the purposes of the remand was to give petitioner an opportunity to show by oral testimony that when in 1940 he incorporated his 1934 declaration in his petition he was not intending to con-

ceal his 1931 declaration from the examiner, we should look to see how this matter stands on this record. Petitioner as witness again stated the explanation as to the 1934 declaration which we had before us in affidavit form on the original appeal and which we treated as sufficient to exculpate him if true. Cross-examination by the government failed to cast any real doubt on his testimony, when the extraordinary course of impeachment was undertaken of a tour through the naturalization service office, during which petitioner was asked to point out the woman who he claimed had advised him in 1934 as to the making of his declaration. The lack of probative value of such a negative test, made after eight years, during which the turnover of government personnel has been notorious, would seem obvious; but completely revealing as to the nature of the rehearing is the examiner's comment on counsel's objection, "It is the crucial part of this case to identify this person." Petitioner, on the other hand, did show that in 1935 he had advised Director Muller of the facts surrounding his 1931 declaration. This knowledge on the part of the naturalization officials that the 1934 declaration contained a misstatement of fact—which petitioner knew he had conveyed to the officials as early as 1935—is strongly persuasive that when he incorporated that declaration in his petition in 1940, he did so in order to give literal compliance with the provisions of § 380, rather than as a planned deception. We think his innocence in this respect must, therefore, stand as proven.

■ The rehearing did produce three new grounds upon which the government asserts the petition should be denied. The first is petitioner's use of the name "Evzen" upon his second arrival in this country. Since "Evzen," however, is no more than the Czechoslovakian equivalent of "Eugen," and since in any event the 1940 petition specifically states that entry in 1934 was made under the name of "Evzen," this objection can be quickly dismissed. Next, certain statements in the affidavit of June 24, 1940, are assailed as false, including conflicting statements as to the amount of money paid Van Riper and petitioner's omission to reveal his flight to California in 1932, his visit to Canada the same year, or his use of the 1931 declaration after knowledge of its fraudulent character. But the variance regarding the money

transaction nine years before was small and trivial, and no specific questions were ever asked as to the other points. The Van Riper deal was painful enough to make petitioner's reluctance to volunteer information understandable. Finally, similar charges of falsity are made with regard to the letter of October 14, 1941, to the New York Medical Examiners. While there were admittedly incorrect statements therein as to petitioner's intent to remain in the United States in 1929, the time he actually learned of Van Riper's fraud, and the time of his departure for Czechoslovakia in 1932, yet none of these are important or extensive and all again relate back to his one misdeed in 1931 stimulated by Van Riper. The letter was actually written—in good faith so far as the record shows—by petitioner's counsel; and there is no reason to hold that its few inconsequential misstatements should brand petitioner a man of such bad moral character as to necessitate his exclusion from the privilege and honor of citizenship.

■ Under the law the burden is on the petitioner to establish good moral character only during the five-year period, not earlier. Petition of Zele, 2 Cir., 127 F.2d 578; United States v. Clifford, 2 Cir., 89 F.2d 184; United States v. Rubia, 5 Cir., 110 F.2d 92; In re Aldecoa, D.C. Idaho, 22 F.Supp. 659, 661. And it has consistently been construed liberally so as to sanction forgiveness after the expiration of five years from the date of a disbarring misdeed. In re Trum, D.C.W.D.Mo., 199 F. 361; In re Centi, D.C.W.D.Tenn., 217 F. 833; In re Guliano, D.C.S.D.N.Y., 156 F. 420; United States v. Mirsky, D.C.S.D.N.Y., 17 F.2d 275; In re Nagy, D.C.S.D.Tex., 3 F.2d 77; Application of Polivka, D.C.W.D.Pa., 30 F.Supp. 67. See, also, In re Schlau, 2 Cir., 136 F.2d 480. On such a construction of the statute we cannot see why petitioner should not be granted his citizenship. Although the record is still not as full as we had hoped as to petitioner's actual conduct and character during the crucial five-year period, it seems clear that, except for the challenge here made, his conduct is appropriate to justify naturalization. In final analysis this case comes down to the issue whether a physician licensed to practice in the State of New York and engaged in the honorable practice of his profession is to be thus again debarred from citizenship, and hence from his useful profession, because many years

ago he became entangled with a "crooked lawyer" who lured aliens on by false promises to attempt to secure citizenship improperly. We adhere to our former view that this is not adequate to serve as a present bar. The order is reversed and the District Court is directed to grant the petition.

SWAN, Circuit Judge (dissenting).

In my opinion the order should be affirmed. In his petition for naturalization the applicant incorporated his declaration of November 2, 1934 which falsely stated that he had filed no prior declaration. By an affidavit of June 24, 1940 he attempted to excuse the making of this false statement on the ground that an unidentified woman employee of the naturalization service had advised him that it was unnecessary to mention his prior declaration because it was invalid. On the former appeal we said, 127 F.2d at page 580: "On the face of the record the petitioner gave an explanation of his conduct that was not contradicted by the government and may have been honest in fact." The case was remanded for the taking of testimony directed primarily, as I read the opinion, to a determination of the honesty of the petitioner's excuse. Of course the government was not able after the lapse of eight years to produce an employee to testify that she was the unidentified person with whom Zele had talked in 1934 and to deny his story. The only way of attacking the story was to attack Zele's credibility, and "his delinquencies in 1931" as well as his subsequent conduct were proper subjects of cross-examination on the issue of credibility. Such cross-examination developed that he was not wholly a dupe of Van Riper. It was shown that on several occasions the man had consciously used a false document for his own advantage. If the petitioner's story of receiving advice from an unidentified employee was not truthful, denial of his petition for naturalization was plainly justified. The trial examiner, who recommended denial, evidently did not believe it, although he made no express findings as to why good moral character was not established. The district judge expressly found that the story was wilfully false. On the record before us I can feel no assurance that the story was truthful. It is strange that the petitioner should not even have asked the name of his adviser, if he actually obtained advice on a matter which he realized was so important. If an uncorroborated story of advice given by an unidentified person must be accepted even though the applicant's credibility has been seriously impeached, it would seem that the question in the declaration of intention regarding prior declarations might as well be omitted. I think the order should be affirmed. Denial of naturalization on the present petition would not forever debar the petitioner from citizenship. See 8 U.S.C.A. § 732(a) (15); In re Guliano, D.C.N.Y., 156 F. 420; In re Stasinopulos, D.C.Mich., 21 F.2d 71.