**Petition of GANI.**

No. 381.

United States District Court

W. D. Louisiana, Lake Charles Division.

Aug. 24, 1949.

Patin & Patin, of Lake Charles, La., attorneys for petitioner.

L. B. Stanaland, Naturalization Examiner, of New Orleans, La., attorney for the Government.

PORTERIE, District Judge.

The petitioner for naturalization, Robert Gani, is a native of Syria, 58 years of age. He has resided in the United States and in the state of Louisiana since 1903. He is married to a native of Syria and they have eight children, all born in the United States. The petitioner has owned and operated a saloon in Calcasieu Parish, Louisiana, just outside the limits of the city of Lake Charles, for many years. Since at least 1943 he has obtained annually a Louisiana state license to deal in intoxicating liquors in the name of his son, Jack Gani, as the ostensible owner of the business. The petitioner admits that his son has not been connected with the business since 1943;

that he, the petitioner, is the sole owner of the business; and that he obtains the liquor license in the name of his son because of his disability of alienage preventing the issuance of such license to him. The petitioner further admits that he is the owner of three coin slot machines on which he pays a federal and state tax and that he has operated the slot machines at his place of business for several years past.

Several reputable citizens residing in and near Lake Charles, Louisiana, have testified that they have been acquainted with the petitioner for more than five years; that he bears a good reputation; that they consider him to be a person of good moral character and, in their opinion, he is attached to the principles of the Constitution of the United States; and that he takes adequate care of his family, having raised several children who are themselves good citizens, two of whom are at present students in medical schools. The witnesses have further testified in substance that they visited the petitioner's place of business frequently and have observed slot machines in operation there and that they have even played the machines.

It has also been established that during the period from 1923 to September 17, 1942 the petitioner has a record of six convictions for violation of state and/or federal liquor laws. There are also other records of the petitioner's arrest during said period on charges of operating a slot machine and a further violation of liquor laws in which the record fails to disclose any disposition of the charges.

The government moved that the petition for naturalization be denied on the ground that the petitioner has failed to establish good moral character and favorable disposition toward the good order and happiness of the United States during the period required by law.

■ In addition to the procedural requirements, the petitioner is required to establish that he has been a person of good moral character, attached to the principles of the Constitution of the United States and well-disposed to the good order and happiness of the United States for at least five years immediately preceding the date of filing his petition for naturalization and from that date up to the present. Nationality Act of 1940, § 307(a), 8 U.S.C.A. § 707(a); In re Nybo, 6 Cir., 42 F.2d 727; Petition of Zele, 2 Cir., 140 F.2d 773; U. S. v. Clifford, 2 Cir., 89 F.2d 184; U. S. v. Rubia, 5 Cir., 110 F.2d 92.

■ The words of the Nationality Act of 1940 are plain and should be accorded their usual significance and taken and understood in their plain, ordinary and popular sense. In re Shaver, 7 Cir., 140 F.2d 180.

■ Naturalization is a privilege offered to any alien desiring to become a citizen but subject to conditions prescribed by Congress and with which the petitioner must strictly comply. Turlej v. U. S., 8 Cir., 31 F.2d 696; U. S. v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; Luria v. U. S., 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101; U. S. v. Girouard, 1 Cir., 149 F.2d 760; Estrin v. U. S., 2 Cir., 80 F.2d 105; Lakebo v. Carr, 9 Cir., 111 F.2d 732; Allan v. U. S., 9 Cir., 115 F.2d 804; Weber v. U. S., 9 Cir., 119 F.2d 932; Petition of Zele, 2 Cir., 140 F.2d 773; Wixman v. U. S., 9 Cir., 167 F.2d 808.

■ A petition for naturalization raises all relevant issues and the petitioner has the burden of proving his right to naturalization. Lakebo v. Carr, 9 Cir., 111 F.2d 732.

■ Any presumptions permissible as to the moral character of a petitioner for naturalization operate in favor of the government. In re Zenzola, D.C., 43 F.2d 648.

■ In determining the character of a petitioner for naturalization the facts and circumstances in each case must be weighed in the light of generally accepted standards of morality. The term "good moral character," as used in the naturalization statute is, of course, not susceptible to a precise uncircumscribed definition. While the term does not mean "moral excellence", it does require that a petitioner for naturalization affirmatively establish good moral character up to the standard of the average

citizen. It has been said to be a concept of a person's natural worth derived from the sum total of all of his actions in the community. U. S. v. De Francis, 60 App. D.C. 207, 50 F.2d 497; Schneiderman v. U. S., 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796.

We are concerned here solely with the question of the moral character of the applicant, Robert Gani. Actually, the question has resolved itself into a determination of whether an applicant for citizenship must establish a moral character superior to that of the average citizen.

■ "We stated that under 8 U.S.C.A. § 382, the burden of proof to show good moral character rested upon petitioner, but that 'good behavior during the five year period [i. e., preceding the date of the petition] is the only test of moral fitness provided in the statute.'

* * * * * *

"Under the law the burden is on the petitioner to establish good moral character only during the five-year period, not earlier. * * * And it has consistently been construed liberally so as to sanction forgiveness after the expiration of five years from the date of a disbarring misdeed." Petition of Zele, 2 Cir., 140 F.2d 773, 774, 776.

At the hearing a number of witnesses appeared and testified in a most positive and convincing manner that the applicant, Robert Gani, is well worthy of citizenship. These witnesses are established and reliable business men of this community in which he lives, Lake Charles. From the above evidence we find that the applicant has spent practically his entire life in this country. He has married and reared a large and successful family; he has educated his children; and at the present time is assisting two of his sons who are seeking medical degrees. He has seen two of his sons take up arms in the defense of those institutions which he has been seeking so long to make his own and he has thanked God when those boys were permitted to return to him unharmed. Never once has he returned to his native land. He has made this, his adopted country, his only country.

The criminal record filed by the government is not so impressive when we stop to analyze it. We find that twenty-five years ago the applicant was convicted of two liquor violations, violations of the prohibition act. One offense occurred in 1923 and the second in 1924 and for these he was doubly prosecuted, by the Federal and State governments, and each imposed separate sentences so that he was most severely punished for these offenses. The "great mistake" of the Eighteenth Amendment is that it made law violators of most of us, for it must be remembered that it was a violation to buy as well as to sell "bootleg whiskey". The only difference between the great majority of the United States citizens and Mr. Gani is that he, the seller, was prosecuted.

The only other conviction against the applicant's record is one in 1942, for selling liquor on Sunday, a misdemeanor for which he received a sentence of $10 fine or ten days. Is that so formidable?

The government complains that the applicant has purchased state liquor license in the name of his son, a native born American citizen. But, in truth, this son lives with the applicant, in the same household, and is supported by the proceeds of that same family enterprise. Local state officials have knowledge of this situation but have made no complaint, so the situation cannot be as serious as the government contends.

The coin machines mentioned by the government are unquestionably in operation. But, as a matter of fact, such machines are in operation throughout the parish of Calcasieu, excepting only the city of Lake Charles. There is an established understanding that the parish officials will permit these machines. Mr. Gani pays a license tax of $100 per annum on each machine. (The government erroneously states that this was not a license, but Act 6 of 1948 (Louisiana), Sec. 1(d) plainly states: " * * * shall pay a license of One Hundred Dollars ($100.00) for each such machine or device.") This is not the time or place to discuss the ethics of the state's law-making body; but, if it is seen fit to license and tax slot machines, it is certain-

ly anomalous to simultaneously hold that they are illegal devices. At any rate, our laws and our officials are responsible for the present status of "slot machines", not Mr. Gani.

In re Hopp is an opinion of a District Court rendered in 1910 and reported in Vol. 179 Federal Reporter, at pages 561, 562. In that case a saloon keeper applied for naturalization. It developed at his hearing that he regularly violated the Sunday closing law of his state. The evidence further developed that the other saloons in the same city did likewise. The question of the moral character of the applicant was squarely at issue and discussing that question the Court said:

"What is meant by good moral character, as the terms are used in this act? What standard does the statute contemplate? It is plain that it does not require the highest degree of moral excellence. A good moral character is one that measures up as good among the people of the community in which the party lives; that is, up to the standard of the average citizen. Ordinary care is the test of liability in every case of negligence. This standard is arrived at, not by the overcautious or the reckless man, but by the average man, respresenting the great mass of men. So here, where the law says a good moral character, it means such a reputation as will pass muster with the average man. It need not rise above the level of the common mass of people. * *

"It must be remembered that the act of keeping open one's saloon on the Sabbath is unlawful, not in and of itself, but merely because it has been prohibited by an arbitrary act of the Legislature. Men of the highest moral character always have and always will differ as to the proper enforcement of sumptuary and police regulations. I cannot see that the applicant should be denied citizenship because he has fallen in with the general public sentiment of the community in which he lives. There is in the conduct and attitude of the applicant no moral turpitude, and nothing evincing a calloused conscience, and it would not,

in my judgment, be a fair construction of the act of Congress to require the applicant to rise above his environment and show by his behavior that his moral character was above the level of the average citizen."

The case of United States v. Dwyer, C.C., 170 F. 686, indicates the tendency of courts to forgive offenses which occur previous to the five year period mentioned in the Naturalization Act. There, the applicant had a record of fifteen convictions for drunkenness, but it appeared that during the four and one-half years immediately preceding his application, he had reformed and had a good record for sobriety.

A Massachusetts District Court, in 1944, in the case of Petition of R——, 56 F.Supp. 969, 971, allowed naturalization of an applicant guilty of fornication saying, "I therefore conclude that proof that a petitioner has committed fornication at least in the circumstances of this case is not an adequate ground for saying that the petitioner is not 'of good moral character.'"

■ We have here a man who, in all but the technical sense of the term, is a citizen of this country. His attachment to the principles of this government has been amply established and his reputation as a good moral individual is vouched for by substantial citizens of this community. To deny him the citizenship which he so earnestly seeks would appear as a rank injustice and would provide gain for no one. We believe it is very much to his credit that he has raised and educated a large and happy family. All of his children are orderly and well behaved and well thought of in the community. It should be noted from the evidence that none of his daughters nor his wife have at any time appeared in his place of business, thus bespeaking much for their high sense of propriety.

In good conscience, we feel that Robert Gani should become a citizen; his virtues far outnumber his vices; moreover, his virtues are basic and substantial and his vices are superficial and relatively puerile.

Let judgment be accordingly prepared for our signature.