EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO R. VÉLEZ MELÉNDEZ, acusado y apelante.

Número 15420.

*Sometido:* 24 de noviembre de 1953. *Resuelto:* 3 de marzo de 1954.

*Santos P. Amadeo,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados del apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

En primero de junio de 1951 el fiscal acusó a Antonio R. Vélez Meléndez del delito de perjurio. Celebrado el juicio ante jurado éste rindió veredicto condenatorio, y en 15 de octubre de 1952 se le sentenció a sufrir la pena de uno a cinco años de presidio, con trabajos forzados, decretando a la vez el tribunal a quo la suspensión de la ejecución de la sentencia a tenor de lo dispuesto por la Ley núm. 259 de 3 de abril de 1946 (pág. 535), según quedó enmendada por la núm. 177 de 4 de mayo de 1949 (pág. 557). Al así proceder, el tribunal fijó las condiciones a ser cumplidas por el acusado para el disfrute de su libertad a prueba. Trece días más tarde, es decir en 28 de octubre del mismo año, el acusado apeló para ante este Tribunal Supremo de la sentencia dictada en su contra, haciendo constar en su escrito que no estaba conforme con la misma. Al siguiente día compareció El Pueblo de Puerto Rico por dos de sus fiscales ante el tribunal a quo con una moción en que alegó en síntesis (1) que el 15 de octubre de 1952 se condenó al acusado a sufrir una pena de uno a cinco años de presidio y en igual fecha se suspendió la sentencia; (2) que en 28 de octubre siguiente el acusado apeló de la sentencia dictada; (3) "que habiendo establecido recurso de apelación el acusado, los efectos de la sentencia han quedado suspendidos y por tanto las condiciones de su libertad a prueba también han quedado suspendidas"; (4) que al acusado no se le ha fijado fianza para permanecer en libertad mientras se sustancia la apelación; y (5) que la misma no levanta ninguna cuestión substancial de derecho que amerite la fijación de fianza para que permanezca en libertad mientras la apelación está pendiente. Se suplicó se ordenara el arresto e ingreso del acusado en la cárcel de distrito de San Juan hasta tanto se resuelva su recurso de apelación. La moción fué señalada para vista. Discutida la misma con toda amplitud, el tribunal a quo la declaró con lugar, anuló (sic) la

fianza que se había prestado(¹) y ordenó el ingreso del acusado en la cárcel de distrito, denegándose a la vez la solicitud del acusado para que se le fijara nueva fianza para permanecer en libertad mientras el recurso estuviera pendiente, por no plantearse, conforme hizo constar el tribunal a quo, ninguna cuestión substancial.(²)   De esa resolución el acusado también apeló.   Esta última es la apelación que ahora nos concierne.   El único fundamento de esta segunda apelación es que "el juez sentenciador cometió error al revocar la suspensión de los efectos de la sentencia que había sido concedídale al acusado por haberse apelado de la sentencia que contra él fuera dictada."

En lo pertinente, la Ley 259 de 1946, según ha sido enmendada por la núm. 177 supra, dispone lo que pasamos a exponer en seguida:

"Artículo 1.— . . . se establece un sistema de libertad a prueba en los tribunales de justicia de Puerto Rico.

"Artículo 2.—Las Cortes de Distrito (hoy día Tribunal Superior) (³) podrán suspender los efectos de la sentencia que se dicte en todo caso de delito grave que no sea asesinato, (etc.) . . . y ordenarán que la persona sentenciada quede en libertad a prueba siempre que, al tiempo de imponer dicha sentencia, concurran todos los requisitos que a continuación se enumeran: . . . una vez puesta a prueba, la persona quedará bajo la custodia legal de la corte y sujeta a la supervisión de la Junta de Libertad Condicional *hasta la expiración del período máximo de su sentencia.*

"Artículo 3.—La duración del período de libertad a prueba . . . será igual a la duración del período máximo señalado en la sentencia.   Durante el período de libertad a prueba la Junta

---

(¹) De los autos aparece que otro juez de la misma sala fijó al acusado una fianza en apelación y que éste la prestó.   Ésa fué sin duda la fianza que el juez sentenciador canceló al decretar el arresto del acusado y su ingreso en el penal.

Posteriormente, y a instancias suyas, por resolución de 7 de noviembre de 1952, este Tribunal Supremo fijó al acusado una fianza de $3,000 para permanecer en libertad provisional mientras se sustancia su apelación.   La misma fué prestada y aprobada.

(²) Véase la Ley núm. 61 de 20 de abril de 1949, pág. 151.

(³) Véase la Ley núm. 11 de 24 de julio de 1952 (Ses. Ext.., pág. 31).

ejercerá el grado de supervisión que estime necesario *para lograr la rehabilitación de la persona y proteger a la comunidad.* Toda persona puesta a prueba será sometida a un régimen disciplinario de vida . . .

"Artículo 4.—La corte sentenciadora podrá en cualquier momento en que a su juicio la libertad a prueba de una persona fuera incompatible con la debida seguridad de la comunidad *o con el propósito de rehabilitación del delincuente,* revocar dicha libertad y ordenar la reclusión de la persona por el período de tiempo completo señalado en la sentencia cuya ejecución suspendió para ordenar la libertad a prueba, sin abonarle a dicha persona el período de tiempo que estuvo a [en] libertad a prueba. . . ." (Bastardillas nuestras.)

Conforme ya hemos visto, ejercitando la discreción otorgádale por la ley anterior, al dictar su sentencia condenatoria por el término indicado el tribunal consideró que debía poner al acusado en libertad a prueba y así lo dispuso. También, que trece días más tarde el acusado apeló y basado en ese solo hecho El Pueblo solicitó la cancelación de la fianza prestada en apelación y el arresto y encarcelación del peticionario, y que así lo decretó el tribunal sentenciador. Dado el único error señalado, la génesis del recurso ante nos es, pues, si bajo las circunstancias expuestas dicho tribunal estuvo o no ajustado a derecho al proceder en la forma en que lo hizo.

El estatuto federal sobre la materia—18 U.S.C.A., capítulo 231, sección 3651—autoriza al tribunal juzgador a suspender la ejecución de una sentencia condenatoria o a suspender la imposición de la misma, como mejor lo estime conveniente. Interpretando ese estatuto—o estatutos similares—se ha resuelto uniformemente que cuando el tribunal sentenciador suspende *la ejecución* de la sentencia contra un acusado y pone a éste en libertad a prueba, la misma resulta ser una sentencia final y, por ende, apelable. *Korematsu* v. *United States,* 319 U. S. 432, 87 L. ed. 1497; *Berman* v. *United States,* 302 U. S. 211, 82 L. ed. 204; *Birnbaum* v. *United States,* 107 F.2d 885, 126 A.L.R. 1207; *Commonwealth* v. *Smith,* 198 Atl. 812, 814; *United States* v. *Lom-*

*bardo*, 174 F.2d 575; Orfield, *Criminal Procedure From Arrest to Appeal* (1947), pág. 584. Asimismo, que cuando el tribunal juzgador meramente declara culpable al acusado, suspende *la imposición* de la sentencia y pone a éste en libertad a prueba, su actuación al efecto no constituye una sentencia final y no es por tanto apelable. *Korematsu* v. *United States*, supra; Orfield, op. cit., supra; *Cf. United States* v. *Beekman*, 155 F.2d 580. También, que un acusado no puede ser puesto en libertad a prueba después de haber sido encarcelado, no importa lo corto que haya sido el término de su encarcelación. *United States* v. *Murray*, 275 U. S. 347, 72 L. ed. 309. Y que la revocación de tal libertad no puede ser un acto arbitrario del juzgador. *Escoe* v. *Zerbst*, 295 U. S. 490; *United States* v. *Van Riper*, 99 F.2d 816; *Bennett* v. *United States*, 158 F.2d 412.

En armonía con el estatuto nuestro antes copiado, los jueces del Tribunal Superior de Puerto Rico están facultados tan sólo para suspender la ejecución de las sentencias que dictan en ciertas causas por delitos graves, que se especifican, mas no para suspender *la imposición* de tales sentencias. Nuestro criterio es—y en esto estamos de acuerdo con los tribunales arriba citados—que una sentencia como la dictada en este caso, cuya ejecución se dejó en suspenso, es apelable para ante este Tribunal, no obstante el hecho de haberse puesto en libertad a prueba al acusado.

Según Orfield, ob. cit., pág. 584:

"El procedimiento de libertad a prueba (*probation*) es uno bajo el cual un acusado, después de haber sido convicto o de haberse declarado culpable, puede ser dejado en libertad bajo la vigilancia de un oficial probatorio avezado mientras observa buena conducta, sujeto a que nuevamente se le ponga bajo custodia y se le encarcele. Es el desarrollo del antiguo procedimiento de sentencia suspendida. Sin embargo, este último se basaba generalmente en una investigación inadecuada y no estaba seguida por vigilancia alguna. La libertad a prueba aplicada en debida forma se basa en una investigación cuidadosa

hecha con anterioridad al momento en que se dicta sentencia y en una vigilancia cuidadosa sujeta a normas de conducta claramente prescritas."

Y según el Tribunal Supremo de la nación:

"El procedimiento de libertad a prueba se dirige a la rehabilitación del individuo y no a la determinación de su culpabilidad. No garantiza una reconsideración de las cuestiones que han sido determinadas ni altera la sentencia que se ha dictado. La libertad a prueba o la suspensión de la sentencia 'se concede como un acto de gracia a una persona convicta de un delito.'" *Berman* v. *United States,* supra. Véase también *Korematsu* v. *United States,* supra.

En verdad [3] la sentencia probatoria o de libertad a prueba, es una gracia que por voz del juez del tribunal sentenciador el soberano concede a personas convictas de un delito, con el propósito de lograr su rehabilitación, (⁴) es una forma de castigo mitigado. *United States* v. *Murray,* supra; *Cooper* v. *United States,* 91 F.2d 195. [5] Al conceder la libertad a prueba a un acusado el juez actúa discrecionalmente. *Fernández* v. *Rivera,* 70 D.P.R. 900; *Pueblo* v. *Camacho,* 69 D.P.R. 358. [4] La libertad a prueba comienza desde el momento en que el juez dicta sentencia y suspende su ejecución. *United States* v. *Rosenstreich,* 204 F.2d 321. [6] En el caso de autos el apelante disfrutó de trece días de libertad a prueba antes de presentar su escrito de apelación contra la sentencia. Si durante dicho período el tribunal a quo hubiera deseado revocar la libertad a prueba de que disfrutaba el acusado, hubiera tenido para ello que tener motivo justificado y dar al acusado oportunidad de ser oído. *Escoe* v. *Zerbst,* supra; *United States* v. *Van Riper,* 99 F.2d 816; *Bennett* v. *United States,* 158 F.2d 412. [7] No hubo aquí imputación alguna de que él violase las condiciones fijádasle para disfrutar de semejante libertad. Ello es admitido por todos. La suspensión de ese privilegio se fundó exclusi-

---

(⁴) Véanse los artículos 3 y 4 de la Ley 177 supra.

vamente, repetimos, en la creencia del juez sentenciador de que por el mero hecho de haber apelado el acusado de la sentencia condenatoria, era su deber dejar sin efecto la orden de libertad a prueba previamente dictada y ordenar el arresto y encarcelación del acusado.   Esto no podía hacerse.   El hecho de que el acusado apelara no violaba ninguna de las condiciones impuéstasle.   [8] Su aceptación de que se le pusiera en libertad a prueba no significaba, ni podía significar, que él tuviera que renunciar su derecho a apelar.   Una cosa es la sentencia condenatoria en sí y otra la orden suspendiendo la ejecución de la misma y poniendo en libertad condicionalmente al acusado.   *Nix* v. *United States*, 131 F.2d 857, 858; *United States* v. *Lindh*, 148 F.2d 332.   La una es separable de la otra.   Mientras una persona goza de libertad a prueba, su disfrute de la vida, su libre albedrío, está restringido, limitado, al cumplimiento de las condiciones fijadas al concedérsele esa gracia.   No puede decirse que es un hombre enteramente libre.   Pesa sobre él la amenaza de la revocación de la sentencia probatoria, no arbitrariamente, sino por motivo justificado, desde luego.   Si al concederse la libertad a prueba a un acusado el objetivo fundamental es lograr su rehabilitación, no hay en puridad de verdad motivo alguno para que por el mero hecho de que él apele de la sentencia condenatoria —sin duda con ánimo de vindicar su nombre del vejamen y de las consecuencias que en sí lleva la sentencia condenatoria—deba castigársele, con la revocación—en este caso con la interrupción o suspensión—de la libertad a prueba que se le concedió.   *Cf. Berman* v. *United States*, supra.   Ese objetivo queda mejor cumplido permitiendo que no obstante la apelación contra la sentencia, él disfrute de su libertad a prueba mientras cumpla con las condiciones que se le han impuesto para gozar de la misma.   [9] Si bien una vez apelada la sentencia el tribunal sentenciador carece de poder para intervenir directamente con la sentencia en sí, dicho tribunal conserva potestad para modificar las condiciones de la liber-

tad a prueba concedida o para revocar la misma por motivos justificados. *United States* v. *Lindh,* supra. Desde luego, al ser revocada la libertad a prueba por incumplimiento de sus condiciones por el acusado, éste será encarcelado y sólo podrá salir en libertad bajo fianza—en aquellos casos en que la ley lo permite—si demuestra a juicio del tribunal que en apelación levanta una cuestión sustancial. Véase la Ley 61 de 20 de abril de 1949 (pág. 151).

De acuerdo con el artículo 347 del Código de Enjuiciamiento Criminal, según fué enmendado por la Ley núm. 128 de 26 de abril de 1950 (pág. 333) "el acusado puede apelar . . . (3) De una providencia dictada después del fallo que afecte los derechos sustanciales de la parte." No hay duda, pues, de que la resolución dictada en este caso, declarando con lugar la moción del Pueblo y ordenando el arresto del acusado y su ingreso en el penal, era apelable. El fiscal, sin embargo, sostiene que como a virtud de la Ley de 12 de marzo de 1903 (Código de Enjuiciamiento Criminal, pág. 249) "una apelación ante la Corte Suprema, de una sentencia condenatoria, suspende la ejecución de la misma, . . ." la apelación interpuesta contra la sentencia deja en suspenso el disfrute de la libertad a prueba otorgada al acusado. No estamos de acuerdo. Ya hemos dicho que una cosa es la sentencia condenatoria y otra lo es la orden poniendo bajo libertad a prueba a la persona sentenciada. El hecho de que se apelara de la sentencia en sí nada tenía que ver con dicha gracia, ni significaba que la orden sobre libertad a prueba debía dejarse en suspenso y ordenarse la encarcelación del acusado mientras estuviera pendiente dicha apelación. La contención del fiscal de que el propósito del tribunal no fué revocar su orden concediendo la libertad a prueba al acusado, sino meramente suspender la misma, debiendo mientras tanto —de no poder prestar fianza—recluirse al acusado en un penal, admite implícitamente que al dictarse en definitiva un fallo adverso al apelante habría que poner a éste a disfrutar

No lo sabemos.   Esto, según hemos visto, no puede hacerse,
puesto que el acusado habría estado ya por algún tiempo en la
cárcel.   Ello sería contrario a todos los precedentes sobre la
materia.   No fué ése el espíritu que animó al legislador al
establecer el sistema de libertad a prueba en los tribunales de
esta isla.   Ese espíritu no fué otro que lograr la rehabilita-
ción del convicto.   Se cumple mejor permitiendo que la per-
sona a quien le han sido otorgados los beneficios dispuestos por
la citada ley, continúe disfrutando de su libertad a prueba
mientras se sustancia la apelación que contra la sentencia de-
finitiva pueda haber interpuesto.

*Debe revocarse la resolución apelada, decretarse la liber-
tad a prueba del apelante bajo las condiciones impuestas al
suspenderse la ejecución de la sentencia de 15 de octubre de
1952, y cancelarse la fianza por él prestada en 8 de noviem-
bre de 1952.*