**Ex parte ROBLES-RUBIO.**
No. 33229.

United States District Court,
N. D. California, S. D.
Jan. 21, 1954.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for respondent.

Sol A. Abrams, San Francisco, Cal., for petitioner.

GOODMAN, District Judge.

Petitioner, Robles-Rubio, an alien Mexican national, being detained and about to be deported by the District Director of the United States Immigration and Naturalization Service, petitions for a writ of habeas corpus, alleging that he is detained and illegally threatened with deportation.

The facts are not disputed. On August 27, 1952, in this court, upon a plea of guilty to a charge of conspiring to sell smoking opium in violation of the Harrison Narcotic Act, 26 U.S.C. §§ 2553 and 2557, and to conceal and transport smoking opium in violation of the Jones-Miller Act, 21 U.S.C.A. § 174, petitioner was placed on probation for a period of five years. Upon his plea of guilty, petitioner became subject to deportation in accordance with 8 U.S.C. § 156a[1] which provided as follows:

"Any alien (except an addict who is not a dealer in, or peddler of, any of the narcotic drugs mentioned in this section) who, after February 18, 1931, shall be convicted for violation of or conspiracy to violate any statute of the United States or of any State, Territory, possession, or of the District of Columbia taxing, prohibiting, or regulating the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt, derivative, or preparation of opium or coca leaves, shall be taken into custody and deported in manner provid-

1. Now Immigration and Nationality Act, § 241(a) (11), 8 U.S.C.A. § 1251(a) (11).

ed in sections 155 and 156 of this title."

Sections 155 and 156 of the Immigration and Nationality Code, Title 8 U.S.C.,[2] referred to in Section 156a, were the code sections prescribing generally the classes of deportable aliens and the manner of their deportation. Included in Section 155 was the following provision:

"The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Attorney General that such alien shall not be deported in pursuance of this chapter".

■ As judicially interpreted,[3] Section 156a, by prescribing for alien narcotic offenders the "manner" of deportation set forth in Section 155, conferred upon the courts sentencing such narcotic offenders this power to forestall deportation by a recommendation, which Section 155 authorized, in respect to aliens convicted of crimes involving moral turpitude.

In accordance with this accepted interpretation of Section 156a, this Court, on September 23, 1952, within 30 days after imposing sentence upon petitioner for the violation of the narcotic statutes, recommended that petitioner should not be deported. As a result, petitioner was not deported.

Within a few months thereafter, on December 24, 1952, the Immigration and Nationality Act of 1952 became effective, 66 Stat. 166, 8 U.S.C.A. § 1101 et seq. This Act effected a complete revision of the immigration and nationality laws of the United States. In the Immigration and Nationality Act of 1952, the provision for deportation of alien narcotic offenders, which had been Section 156a of the old Code, no longer appears as a separate section. Instead, alien narcotic offenders are enumerated along with other deportable aliens in the section of the statute prescribing generally the classes of deportable aliens and the manner of their deportation. This general section, section 241 of the Act, is now included in the Code as Section 1251 and was the former Code Section 155. Subsection (d) of the new Section 1251 states that, except as otherwise specifically provided, the provisions of Section 1251 shall be applicable to any alien belonging to any of the classes enumerated therein notwithstanding that the events, which determined the classification of such alien, occurred prior to the date of enactment of the Immigration and Nationality Act of 1952.

■ The Government contends that this is indicative that the deportation provisions of Section 1251 are retroactive, and that since petitioner falls within the class of narcotic offenders declared to be deportable, he is now subject to deportation. There is no doubt that the provision of Section 1251 subjecting alien narcotic offenders to deportation is retroactive in the sense that it applies to offenses committed prior to the effective date of such section. But, no question of retroactivity arises in respect to the application of this provision to petitioner. This is so because at the time petitioner committed the narcotic offenses, they were declared to be deportable offenses by former Code Section 156a.

■ The actual basis upon which the Government now seeks to deport petitioner is not that his previous offenses have retroactively been made deportable offenses, but that the recommendation of this court which previously relieved him from deportation has been nullified by

---

2. Now Immigration and Nationality Act, §§ 241, 242, 8 U.S.C.A. §§ 1251, 1252.

3. See Dang Nam v. Bryan, 9 Cir., 1934, 74 F.2d 379; Ex parte Eng, D.C.N.D. Cal.1948, 77 F.Supp. 74.

the 1952 Act. The asserted nullification of the court's recommendation arises, not from any specific provision to that effect in the new statute, but as a result of the inclusion in the new statute of the provision for deportation of narcotic offenders in the section which lists generally the classes of deportable aliens. As previously noted, when the provision for deportation of alien narcotic offenders formerly appeared as a separate code section, reference was made to the general section dealing with deportable aliens to supply the "manner" of deportation for narcotic offenders. This "manner" of deportation, by judicial interpretation, included the power granted by the general section to courts, sentencing alien criminal offenders, to forestall deportation by recommending against it. But, now that the specific provision for the deportation of narcotic offenders is included in the general section dealing with deportable aliens, there is, of course, no reference back to the general section to supply the "manner" of deportation for narcotic offenders. And, in so far as appears from the language of the general section, standing alone, the power of a sentencing court to recommend against deportation relates only to aliens convicted of crimes involving moral turpitude and not to narcotic offenders. It would thus seem that as a result of the statutory rearrangement, the courts no longer have the power to recommend against deportation in narcotic cases. It may well be that the Congress never contemplated this result. There is nothing in the legislative history of the Immigration and Nationality Act of 1952 to indicate that the Congress ever considered the matter at all. But, however that may be, it is not the question of the power of the courts to recommend against deportation in future narcotic cases that concerns us here.

What must be determined is the effect of the new statute upon the status of aliens who have heretofore been judicially saved from deportation in narcotics cases. The *power* of the Congress to alter their status and subject them now to deportation is unquestionable.[4] But, it is the *intent* of the Congress in this regard, which we must endeavor to ascertain.

The new statute, like the old, subjects aliens convicted of narcotic offenses to deportation. Does the fact that the new statute makes no provision for future judicial recommendations against deportation of such offenders and is silent upon the subject of the present effect of past recommendations, justify the inference that the Congress intended to nullify the past recommendations? Certainly a Congressional intent to nullify sub silentio considered judicial recommendations made over a period of many years[5] should not be lightly inferred. But, this would be a debatable question, were it not for the saving clause in the Immigration and Nationality Act of 1952, § 405(a), 8 U.S.C.A. § 1101 note.

The saving clause in the 1952 Act is one of unusual breadth as is appropriate in a statute which effects a complete revision of the immigration and nationality laws of the nation. The breadth of the savings clause is indicative of the Congressional awareness that the 1952 Act would inevitably have unforeseen effects upon preexisting statuses

---

4. See United States ex rel. Barile v. Murff, D.C.Md.1953, 116 F.Supp. 163.

5. Since 1922, when violation of the Jones-Miller Act was first made a deportable offense, the courts have possessed the power to recommend against the deportation of an alien convicted of violating that narcotic statute. 42 Stat. 596; United States v. George Wing, D.C.Nev. 1925, 6 F.2d 896. And, when, in 1931, the violation of other narcotic statutes, including the Harrison Narcotics Act, was made a deportable offense, the power of the courts to recommend against deportation was made applicable to violators of these statutes. 46 Stat. 1171; Dang Nam v. Bryan, 9 Cir., 1934, 74 F.2d 379. Thus for 30 years prior to the passage of the Immigration and Nationality Act of 1952, the courts have been making recommendations against deportation in narcotic cases.

and conditions, and the Congressional desire to avoid such effects in so far as possible. The savings clause provides inter alia that "Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect * * * any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect * * *." In my opinion, this provision was designed to meet just such a situation as is presented here. Consequently, I hold that, by virtue of the savings clause in the 1952 Act, the previous recommendation against deportation continues to relieve petitioner from deportation as a narcotic offender.

The petition is granted. The petitioner is released from detention.