UNITED STATES v. MENASCHE.

No. 4793.

United States Court of Appeals
First Circuit.

March 3, 1954.

Douglas P. Lillis, Acting District Counsel, Miami Dist., Immigration and Naturalization Service, Miami, Fla. (Ruben Rodriguez Antongiorgi, U. S. Atty. Dist. of Puerto Rico, San Juan, Puerto Rico, on brief), for appellant.

Tomas I. Nido, San Juan, Puerto Rico (Fiddler, Gonzalez & Nido, San Juan, Puerto Rico, on brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

810

WOODBURY, Circuit Judge.

The petitioner-appellee, a native of Belgium and citizen of France, lawfully entered the United States for permanent residence on March 7, 1948, and on April 16 of the same year he filed his Declaration of Intention to become a citizen of the United States. His employment in an executive capacity by a wholly owned subsidiary of Columbia Pictures International,—an American corporation—necessitated his absence from the United States for periods of more than six months, but never for more than a year at a time, on several occasions during the following five years. On April 24, 1953, he filed his Petition for Naturalization in the court below.

The Naturalization Examiner designated to conduct the petitioner's preliminary examination found, and the United States does not deny, that in spite of the petitioner's absences he did not in fact abandon or otherwise forfeit his "residence" in the United States. On the other hand, the petitioner concedes, as he must, that his absences were of such frequency and duration that he was not physically present in the United States for at least one half of the five-year period immediately preceding the filing of his Petition for Naturalization. This, the Government contends, prevents the petitioner's naturalization under § 316(a)[1] of the Immigration and Nationality Act, 66 Stat. 242, 8 U.S.C.A. § 1427(a), which was passed over presidential veto on June 27, 1952, and went into effect 180 days thereafter on December 24th. The petitioner, however, contends (the court below agreed and admitted the petitioner to citizenship) that his lack of physical presence in the United States is of no consequence for the reason that he is entitled to be naturalized under § 307 (a)[2] of the Nationality Act of 1940, 54 Stat. 1142, which contains no requirement of physical presence in the United States prior to a petition for naturalization.

The answer to these conflicting contentions lies in the meaning of subsections (a) and (b) of § 405 of the Immigration and Nationality Act of June 27, 1952, 8 U.S.C.A. § 1101 note, which in material part read:

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document

---

1. "No person, except as otherwise provided in this title, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years *and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time,* and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States,

and well disposed to the good order and happiness of the United States." [Italics supplied.]

2. "No person, except as hereinafter provided in this Act, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing petition for naturalization has resided continuously within the United States for at least five years and within the State in which the petitioner resided at the time of filing the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, [sic (statuses?)] conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *

"(b) Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed."

Certainly if Menasche could have filed a petition for naturalization prior to the effective date of the 1952 Act he would have been entitled under the specific provisions of subsection (b) above to have had that petition heard and determined in accordance with the Nationality Act of 1940. United States v. Cunha, 209 F.2d 326, decided by this court January 8, 1954. And from the particularity of that provision the converse would seem to follow, that is, that all petitions for naturalization filed after the effective date of the Immigration and Nationality Act should be heard and determined in accordance with the provisions of that Act and not in accordance with the requirements of the statute which preceded it. Subsection (a) of § 405, however, is broad and sweeping in its terms. Indeed it is so comprehensive that subsection (b) seems redundant. See Shomberg v. United States, decided by the Court of Appeals for the Second Circuit January 25, 1954, 210 F.2d 82. But however that may be, subsection (a) provides categorically that "Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, * * * or to affect * * * any status, condition, *right in process of acquisition* [italics ours] * * * existing, at the time this Act shall take effect; but as to all such * * * rights * * * the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect."

 We need give no weight to the continuing validity of Menasche's declaration of intention, for in the 1952 Act Congress eliminated the requirement of a declaration of intention as a condition precedent to naturalization. Nor do we pause to inquire whether Menasche acquired a "status" of some kind, or performed or acquired some sort of a "condition," when he filed his declaration of intention in April 1948. The reason for this is that from that time on he was in the process of acquiring a "right" for he was complying with then existing statutory requirements for naturalization, and in Tutun v. United States, 1926, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738, Mr. Justice Brandeis, speaking for a unanimous court, said, citing United States v. Ginsberg, 1917, 243 U.S. 472, 475, 37 S.Ct. 422, 61 L.Ed. 853 and Luria v. United States, 1913, 231 U.S. 9, 22, 34 S.Ct. 10, 58 L.Ed. 101, that although the opportunity to become a United States citizen by naturalization was not a right but merely a privilege, nevertheless the opportunity for citizenship having been conferred by statute, a right to receive a certificate of naturalization arises once all the statutory requirements have been met and the requisite facts are established. Thus, although Menasche acquired no right to naturalization in 1948 when he filed his declaration of intention, he did then start to comply with the statutory re-

quirements necessary at that time for the acquisition of that "right." Hence we think it clear that he was in the process of acquiring a "right" from April 16, 1948 on through December 24, 1952, when the Immigration and Nationality Act became effective. It follows that his situation falls squarely within the provisions of § 405(a) quoted above.

■■■ The Government argues that this construction of the section should be avoided because it would leave the law. as to the naturalization of aliens unsettled for many years to come. This may be so, but the argument should be addressed to Congress. The words of the statute lead clearly to the result we have reached.

The judgment of the District Court admitting the appellee to citizenship is affirmed.

MAGRUDER, Chief Judge (concurring).

I concur in the opinion of the Court. It is not apparent to me how our interpretation of the statute will result in "unsettling" the law relating to naturalization for many years. The only result will be—and this is quite a different thing—that the provisions of the 1940 Act will continue to govern a greater number of cases than the government would like, and that provisions of the 1952 Act will not be fully applicable for a greater period than the government would like. For all we know, the Congress in so providing may have had in mind the equities of a situation like the present, where, at the date the 1952 Act went into effect, the petitioner had arrived almost at the threshold of American citizenship, following faithfully the procedures for acquiring a right to naturalization under the 1940 Act. We are naturally loath to accept the government's contention that the Congress intended to slam the door in the face of such an applicant for citizenship and to make him start all over again.