Nat **YANISH**, Plaintiff,

v.

Bruce **BARBER**, District Director, Immigration and Naturalization, Defendant.

Civ. A. No. 29013.

United States District Court, N. D. California, S. D.

Feb. 2, 1955.

Gladstein, Andersen & Leonard, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for respondent.

OLIVER J. CARTER, District Judge.

The matter before this Court is a motion by respondent, the District Director of the Immigration and Naturalization Service, to modify an order entered by United States District Judge Dal M. Lemmon restraining respondent from imposing certain conditions on the issuance to petitioner of a bail bond pending final disposition of the deportation proceedings against petitioner.

When deportation proceedings were begun against petitioner in 1946, he was released from custody on $500 bond containing the conditions usual at that time, that he be produced for hearings with regard to the charge and for deportation if that were eventually ordered. At a hearing in 1949 the Immigration and Naturalization Service told him that he would be required to post a $5,000 bond containing the added condition that he report periodically in person to an office of the Service. Petitioner then instituted this proceeding, seeking to enjoin respondent from enlarging the amount of the bond and from imposing additional conditions such as requiring periodic visits to an office of the Service. In 1950 Judge Lemmon entered an order denying an injunction as to the increase in the amount of the bond, but enjoining respondent from revising or amending the bail bond by requiring periodic visits by petitioner to the Immigration Service or in any other particular except as to the principal amount of the bond.

On March 9, 1953 petitioner was informed by the Immigration Service that he would be imprisoned unless he posted a new bond containing various conditions including a requirement of periodic visits to the Immigration Service. Petitioner then filed a petition that respondent be held in contempt of Judge Lemmon's order of July 28, 1950. The Court declined to order that respondent show cause why he should not be held in contempt, basing its order on the fact that the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq., had become effective before respondent attempted to impose further conditions on petitioner being admitted to bail, and that Act empowers the Attorney General, during the pendency of deportation proceedings, to release aliens on a bond containing such conditions as the Attorney General may prescribe. On appeal this order was reversed, Yanish v. Barber, 9 Cir., 211 F.2d 467, the court holding that the injunction issued by Judge Lemmon continued to be valid and to require obedience until modified or set aside in appropriate proceedings. The court said at page 470:

"It would appear from the language of this reservation that Congress, as a measure of policy or precaution, intended to preserve the effectiveness of all subsisting proceedings, orders, or judgments fixing or determining individual statuses, obligations, liabilities, or rights; and for this purpose to have continued in force the statutes or parts thereof under which such status, obligation, liability or right became fixed or determined. The pertinency of the clause to Judge Lemmon's injunctive order seems apparent. The jurisdiction of the court over the subject matter of that proceeding did not terminate with the granting of the injunction. It persisted, and the cause continued to be pending in the sense that either party might move the court for further action enforcing or modifying the order. In sum, the proceeding and order were valid and subsisting as of the time the Act took effect. Cf. In the Matter of Robles-Rubio, D.C., 119 F.Supp. 610.

"We feel constrained to observe that, even apart from the savings clause, the appropriate procedure for appellee to pursue as a public officer would have been to move for a modification or vacation of the injunction."

Respondent now moves to vacate the injunction issued by Judge Lemmon, on the ground that the Immigration and Nationality Act of 1952 has since become effective, and therefore the Attorney General now has the power to impose any conditions he deems desirable before admitting aliens to bail pending deportation proceedings. Petitioner opposes respondent's motion, contending that the savings clause of the 1952 Act requires that the same law be applied to petitioner's situation now as Judge Lemmon applied at the time he issued the injunction, and contending further that the court of appeals opinion so held.

▮ This Court does not agree that the effect of the court of appeals opinion was to hold adversely to respondent's position here; the holding of the court of appeals was that the injunction was valid until vacated by the issuing court, leaving open the question of what the result should be if proceedings were begun for the purpose of vacating the injunction. Therefore the court of appeals decision is not the law of the case as to the point raised here, nor is it decisive of the problem before this Court either by virtue of the doctrine of res judicata or stare decisis. It should be noted that no constitutional question has been raised. Consequently this memorandum and order proceeds upon the basis that Congress had the *power* to vest discretion in the Attorney General to impose conditions on bail bonds as to proceedings that were pending when the 1952 Act took effect; the precise question for determination here is whether Congress *intended* that result or whether Congress intended the new provision to apply to deportation proceedings begun under the 1952 Act only. It is the opinion of this Court that Congress intended the new provision to be prospective, and that the Attorney General has the power to impose conditions on bail bonds as to proceedings begun under the 1952 Act only. This conclusion is based primarily on the extremely comprehensive provisions of the savings clause of the 1952 Act which is found in a note following 8 U.S.C.A. § 1101. It provides in material part:

"(a) Nothing contained in this Act (this chapter), unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act (this chapter) shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act (this chapter) shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes (so in original; probably should read "statuses"), conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act (this chapter) are, unless otherwise specifically provided therein, hereby continued in force and effect."

▮ It is difficult to imagine a more inclusive savings clause than the one just quoted. As United States District Judge Louis E. Goodman said in Ex parte Robles-Rubio, D.C.N.D.Cal., 119 F.Supp. 610, 613:

"The saving clause in the 1952 Act is one of unusual breadth as is appropriate in a statute which effects a complete revision of the immigration and nationality laws of the nation."

Furthermore, Congress deliberately made the savings clause in the 1952 Act more comprehensive than its predecessors in the field of immigration and naturalization legislation. Although the savings clause in the Nationality Act of 1940 was quite broad in its provisions, several new terms were added to the clause in the 1952 Act including "status," "condition," "right in process of acquisition," "liability," and "obligation." These factors lead this Court to resolve doubts in favor of a construction that would save the former law for application to the problem here.

It is also significant to note that the great majority of cases construing the savings clauses in the 1952 Act and its predecessors decided in favor of the applicability of the savings clauses; that is, the general trend of the decisions is toward a broad construction of such clauses. Where those decisions involved a proceeding validly begun before the 1952 Act took effect, the holding invariably was that the law in effect when the proceeding was begun should be applied. Accardi v. Shaughnessy, 347 U. S. 260, 361 note 1, 74 S.Ct. 499, 98 L. Ed. 681; Petition of Pringle, D.C.D. Va., 122 F.Supp. 90, affirmed, United States v. Pringle, 4 Cir., 212 F.2d 878; Petition of Menasche, D.C.D.Puerto Rico, 115 F.Supp. 434, affirmed United States v. Menasche, 1 Cir., 210 F.2d 809; Application of Shomberg, D.C.S.D.N.Y., 115 F.Supp. 336, affirmed Shomberg v. United States, 2 Cir., 210 F.2d 82; United States v. Matles-Friedman, D.C.E.D.N. Y., 115 F.Supp. 261.

One further indication of congressional intent may be found in the language of the section which creates the new power in the Attorney General to impose conditions on the issuance of bail bonds. That section is 8 U.S.C.A. § 1252(a) and it provides in part:

"Pending a determination of deportability in the case of any alien *as provided in subsection (b) of this section,* such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole." (Emphasis supplied.)

The underscored wording suggests that the section is meant to apply to deportation proceedings brought under that section of the 1952 Act only, and not to include deportation proceedings pending at the time the 1952 Act took effect.

In view of the fact that the deportation proceeding against petitioner was instituted before the 1952 Act took effect (and therefore the law in effect at the time the deportation proceeding began was preserved as to that proceeding by the savings clause of the 1952 Act) respondent's motion to modify and vacate Judge Lemmon's order is denied.

It is ordered that the motion of respondent Bruce G. Barber to modify and vacate the order entered by United States District Judge Dal M. Lemmon on July 21, 1950 be, and the same is hereby denied.